UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LENNOX LONDON,

               Plaintiff,

         -against-

NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE; A.D.A. MICHELLE BURKE; D.A.
MADELINE SINGAS; A.D.A. NICOLE
ALOISE; FIRST PRECINCT P.O. ANDREW
MIRANDA, SHIELD #0498; SUPERVISOR
LT. KEVIN C. DRISCOLL, #7447; FIRST
SQUAD DETECTIVES: 1ST PRECINCT DET.
MATTHEW ANDOOS, DET. THROO, DET.
MICHAEL FORANOCE, DET. MAZZIE;
GOVERNOR ANDREW M. CUOMO; NASSAU
COUNTY DISTRICT COURT; HON. JUDGE
TERENCE P. MURPHY; HON. JUDGE MERYL
J. BERKOWITZ; LEGAL AID SOCIETY OF
NASSAU COUNY, N.Y.; and NANCY GARBER,

              Defendants.
----------------------------------X

MEMORANDUM & ORDER
20-CV-3988(JS)(AKT)

LENNOX LONDON,

               Plaintiff,

         -against-             20-CV-3989(JS)(AKT)

NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE; A.D.A. MICHELLE BURKE; D.A.
MADELINE SINGAS; A.D.A. NICOLE
ALOISE; FIRST PRECINCT P.O. ANDREW
MIRANDA, SHIELD #0498; SUPERVISOR
LT. KEVIN C. DRISCOLL, #7447; FIRST
SQUAD DETECTIVES: 1ST PRECINCT DET.
MATTHEW ANDOOS, DET. THROO, DET.
MICHAEL FORANOCE, DET. MAZZIE;
GOVERNOR ANDREW M. CUOMO; NASSAU
COUNTY DISTRICT COURT; HON. JUDGE
TERENCE P. MURPHY; HON. JUDGE MERYL
J. BERKOWITZ; LEGAL AID SOCIETY OF
NASSAU COUNY, N.Y.; and NANCY GARBER,

              Defendants.

```
---------------------------------X
```
LENNOX LONDON,

                    Plaintiff,

        -against-                        20-CV-3990(JS)(AKT)

NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE; A.D.A. MICHELLE BURKE; D.A.
MADELINE SINGAS; A.D.A. NICOLE
ALOISE; FIRST PRECINCT P.O. ANDREW
MIRANDA, SHIELD #0498; SUPERVISOR
LT. KEVIN C. DRISCOLL, #7447; FIRST
SQUAD DETECTIVES: 1ST PRECINCT DET.
MATTHEW ANDOOS, DET. THROO, DET.
MICHAEL FORANOCE, DET. MAZZIE;
GOVERNOR ANDREW M. CUOMO; NASSAU
COUNTY DISTRICT COURT; HON. JUDGE
TERENCE P. MURPHY; HON. JUDGE MERYL
J. BERKOWITZ; LEGAL AID SOCIETY OF
NASSAU COUNY, N.Y.; and NANCY GARBER,

                    Defendants.
```
---------------------------------X
```
APPEARANCES
For Plaintiff:        Lennox London, pro se
                      20-A-1857
                      Downstate Correctional Facility
                      121 Red Schoolhouse Road
                      P.O. Box F
                      Fishkill, New York 12524

For Defendants:       No appearances.

SEYBERT, District Judge:

        Before the Court are three civil rights Complaints filed

by incarcerated pro se plaintiff Lennox London ("Plaintiff")

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an

application to proceed in forma pauperis for each Complaint.  For

the reasons that follow, Plaintiff's applications to proceed in

forma pauperis are GRANTED and the Complaints are CONSOLIDATED

                                2

into the first filed case, Case Number 20-CV-3988(JS)(AKT).  The Complaints assigned Case Numbers 20-CV-3989(JS)(AKT) and 20-CV-3990(JS)(AKT) shall be CLOSED.  All future filings shall be made in Case Number 20-3988(JS)(AKT) only.  In addition, Plaintiff's Section 1983 claims are DISMISSED, as set forth below, pursuant to 28 U.S.C. §§ 1915, 1915A.

## PROCEDURAL BACKGROUND

In August 2020, Plaintiff filed three substantially similar Complaints against the same Defendants.  On August 21, 2020, Plaintiff filed two Section 1983 Complaints in this Court against:  the Nassau County District Attorney's Office, A.D.A. Michelle Burke ("ADA Burke"), D.A. Madeline Singas ("DA Singas"), A.D.A. Nicole Aloise ("ADA Aloise"), First Precinct P.O. Andrew Miranda, Shield #0498 ("PO Miranda"); Supervisor Lt. Kevin C. Driscoll, #7447 ("Lt. Driscoll"); the following First Squad Detectives: 1st Precinct Det. Matthew Andoos ("Det. Andoos"), Det. Throo ("Det. Throo"), Det. Michael Foranoce ("Det. Foranoce"), Det. Mazzie ("Det. Mazzie"); Governor Andrew M. Cuomo ("Gov. Cuomo"), Nassau County District Court ("NC District Court"), Hon. Judge Terence P. Murphy ("Judge Murphy"), Hon. Judge Meryl J. Berkowitz ("Judge Berkowitz"), Legal Aid Society Of Nassau County, N.Y. ("Legal Aid"), and Nancy Garber ("Garber"; collectively, the "Defendants").  The Complaint assigned docket number 20-CV-3988 was accompanied by an application to proceed in forma pauperis,

3

but did not include the required Prisoner Litigation Authorization form ("PLRA"). (See 20-CV-3988, IFP Mot., D.E. 2.) Accordingly, by Notices of Deficiency dated August 26, 2020 and August 27, 2020, Plaintiff was instructed to complete and return the enclosed PLRA forms, which he did on September 3, 2020 and September 8, 2020. (PLRA, D.E. 8-9.)

The other August 21, 2020 Complaint was assigned Case Number 20-CV-3990 and, because Plaintiff had not paid the fee or filed an application to proceed in forma pauperis, by Notice of Deficiency dated August 27, 2020, Plaintiff was instructed to either remit the filing fee or file the enclosed application to proceed in forma pauperis and PLRA in order for his case to proceed. (D.E. 4.) On September 3, 2020, Plaintiff timely filed the PLRA (D.E. 6), and, on September 8, 2020, he filed an application to proceed in forma pauperis and another PLRA. (D.E. 7-8.)

On August 24, 2020, Plaintiff filed another Complaint, assigned Case Number 20-CV-3989, against the same Defendants. Because Plaintiff had not paid the fee or filed an application to proceed in forma pauperis, by Notice of Deficiency dated August 27, 2020, Plaintiff was instructed to either remit the filing fee or file the enclosed application to proceed in forma pauperis and PLRA in order for his case to proceed. (D.E. 4.) On September 8, 2020, Plaintiff timely filed an application to proceed in forma

4

pauperis and PLRA.  (D.E. 7-8.)

THE COMPLAINTS[1]

Each Complaint names the same Defendants and contains the same allegations and claims.  Plaintiff challenges his on-going state court criminal prosecution and seeks, among other things, the dismissal of the indictment and his release from incarceration.  According to Plaintiff, he had an on-going dispute with his neighbor and, on August 27, 2019, he argued with his neighbor about tree branches Plaintiff claims were thrown on his lawn.  (Compls. at 4.)[2]  Plaintiff alleges that his neighbor "shot at me before because he hates me, he said he never like me, so I shot to the ground to scare him away."  (Compls. at 4.)  As a result, Plaintiff was arrested and charged with attempted murder in the second degree and criminal possession of a weapon in the second degree.  (Compls. at 9.)

Plaintiff complains that he was "overcharged by the ADA Michelle Burke and P.O. Andrew R. Miranda when I should not be charged with, my correct charges was attempted assault."  (Compls. at 9.)  According to Plaintiff, because no one was injured and,

---

[1] Excerpts from the Complaints are reproduced here exactly as they appear in the originals.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

[2] When citing to the Complaints, the Court refers to the page numbers generated by the Court's Electronic Case Filing system (ECF).

due to his mental illness,[3] the charges are improper.  (Compls. at 4, 7, 9.)

Plaintiff also complains that he was pressured by PO Miranda, Lt. Driscoll, Det. Andoss, Det. Mazzie, Det. Foranoce, and Det. Throo to give a statement even though he asked for a lawyer.  Plaintiff claims that the officers did not "read me my rights."  (Compls. at 9-10.)  However, after "a few hours in the Interrogation Arrest Room," Plaintiff "told them what happened after being pressured, scared, tired, [and] drained" and "then they read me my rights."  (Compls. at 10.)  Plaintiff alleges that PO Miranda "lied on the Grand Jury stand when the ADA Michelle Burke asked him if he read me my rights before questioning me and said yes."  (Compls. at 10.)

Next, Plaintiff challenges the amount set as bail during his arraignments.  According to Plaintiff, he was first arraigned on August 28, 2019, with bail being set at $250,000.  (Compls. at 11.)  Plaintiff alleges that he had a "2nd arraignment . . . on September 24, 2019" where he was indicted on an additional fifteen counts and Judge Berkowitz set bail at either one-million dollars bond or half-a-million dollars cash.  (Compls. at 11.)  Plaintiff claims this bail is excessive and that his attorney, Garber, never

---

[3] Plaintiff alleges that he suffers from mental illness, having been diagnosed with bi-polar disorder, schizophrenia, psychosis, depression, and anxiety.  (Compls. at 7.)

told him about the second grand jury and waived his "right to testify without me knowing." (Compls. at 11.) According to Plaintiff, "I have a right to appear before a grand jury as a witness on my own behalf." (Compls. at 11.) Plaintiff also claims that ADA Burke failed to turn over unspecified exculpatory evidence. (Compls. at 13.)

Plaintiff also complains that his right to a speedy trial is being denied as a result of Governor Cuomo's suspension of "CPL 30.30, 240 the Speedy Trial Rights and the Automatic Disclosure file. I have rights that cannot be infringed upon and when Gov. Cuomo suspended Criminal Procedure Law he violated Due Process Law – the 14th Amendment." (Compls. at 14-15.) According to Plaintiff, "[t]he COVID-19 Pandemic is not an exceptional circumstance to be used to justify suspending criminal procedure law." (Compls. at 21-22.)

Finally, Plaintiff complains that he is "vulnerable to the attack of the Coronavirus" because he is pre-diabetic and has underlying medical conditions, including tuberculosis, a weak immune system, and "breathing problems." (Compls. at 4, 8, 22-23.) However, ADA Aloise opposed his application for compassionate release, and it was denied by Judge Murphy. (Compls. at 23-24.) Plaintiff challenges that ruling, claiming that Judge Murphy and ADA Aloise "put themselves in the place of medical physicians putting plaintiff's life at risk by knowingly

making a decision that was against top medical physicians that instructed the DOC and Jails to release underlined detainees with the illnesses that was vulnerable to the disease." (Compls. at 23.)

For relief, Plaintiff seeks to have the indictments dismissed with prejudice and to be released from incarceration. Plaintiff also seeks to recover a damages award in the total sum of three-and-a-half-million dollars. (Compls. at 5, 29-30.)

## DISCUSSION

### I.   In Forma Pauperis Applications

Upon review of Plaintiff's declarations in support of his applications to proceed in forma pauperis, the Court finds that Plaintiff is qualified by his financial status to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's requests to proceed in forma pauperis are GRANTED.

### II.   Consolidation

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." Johnson v. Celotex Corp.,

899 F.2d 1281, 1284-85 (2d Cir. 1990).  Consolidation of cases with common questions of law or fact is favored "to avoid unnecessary costs or delay," Johnson, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (internal citations omitted).

"The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations.  Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Kellen Co., Inc. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (internal quotation marks, alterations, and citations omitted); accord Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989).  The first-filed rule seeks to conserve judicial resources and avoid duplicative litigation. See Jacobs, 950 F.2d at 92; First City Nat'l Bank & Trust Co., 878 F.2d at 80; Kellen, 54 F. Supp. 2d at 221.

Here, Plaintiff's Complaints are largely repetitive and are nearly identical.  Certainly, the Complaints involve common issues of law and fact.  Accordingly, in the sound exercise of its discretion, the Court orders that Plaintiff's cases be CONSOLIDATED pursuant to Federal Rule of Civil Procedure 42 into

the first filed case, Case Number 20-CV-3988(JS)(AKT).  The Clerk of Court is DIRECTED to: (1) consolidate these actions; and (2) mark CLOSED cases assigned Case Numbers 20-CV-3989(JS)(AKT) and 20-CV-3990(JS)(AKT).  Any future filings are to be docketed in **Case Number 20-CV-3988 only.**

III.  Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b).  An action is frivolous as a matter of law when, inter alia, it is based on an "indisputably meritless legal theory" or when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).  The Court is required to dismiss the action as soon as it makes such a determination.  See 28 U.S.C. § 1915A.

Courts are obliged to construe the pleadings of a pro se plaintiff liberally.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  However, a complaint must plead

10

sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). With these standards in mind, the Court considers Plaintiff's claims below.

A.   Claims Challenging the Charges in the Indictments

Plaintiff complains that the charges against him are improper. Although Plaintiff admits to firing a gun during an argument with his neighbor, he claims that the attempted murder charge and criminal possession of a weapon charge are excessive. Rather, Plaintiff believes that attempted assault would be the "correct charge." (Compls. at 9.) Such claims are frivolous.

11

The decision whether to charge, and what to charge, are solely within the discretion of the prosecution.  See Barnett v. City of Yonkers, No. 15-CV-4013, 2020 WL 2539005, at *5 (S.D.N.Y. May 19, 2020) (role of prosecutor includes "'evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged'")(citing Hill v. City of N.Y., 45 F.3d 653, 661 (2d Cir. 1995)); see also United States v. Avenatti, 433 F. Supp. 3d 552, 561 (S.D.N.Y. 2020) ("'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion.'")(quoting Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)).  Thus, Plaintiff's claims challenging the charges in the indictments are implausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

B.   Claims Challenging the Amount Set as Bail

Plaintiff also challenges the amount set as bail during his arraignments.  According to Plaintiff, he was first arraigned on August 28, 2019 and bail was set at $250,000.  (Compls. at 11.)

Plaintiff alleges that he had a "2nd arraignment . . . on September 24, 2019" where he was indicted on an additional fifteen counts and bail was set at one million dollars bond or $500,000 cash. (Compls. at 11.)  Plaintiff claims the bail set is excessive.

When bail is granted, the Eighth Amendment requires that it may not "impose restraints that are more than necessary to achieve the government's interest[,] . . . [in] preventing risk of flight and danger to society or children." United States v. Polouizzi, 697 F. Supp. 2d 381, 390 (E.D.N.Y. 2010) (citing United States v. Salerno, 481 U.S. 739, 754 (1987)).  "The Supreme Court has held that the term 'excessive' means 'grossly disproportional to the gravity of a defendant's offense.'" Barton v. New York, No. 17-CV-5326, 2018 WL 262836, at *2 (E.D.N.Y. Jan. 2, 2018) (quoting United States v. Bajakajian, 524 U.S. 321, 334, 118 S. Ct. 2028, 2036 (1998)).

Here, Plaintiff claims that his bail was excessive because the charges against him were "legally insufficient." (Compls. at 11.)  According to Plaintiff, the "evidence was insufficient, illegal, no proof of attempted murder."  (Compls. at 11.)  Plaintiff also alleges that the bail set at his second arraignment on September 24, 2019 was excessive because it was higher than the new Bail Reform Law that "took effect on Jan. 1st

13

2020.  My bail should not be that high by the new Bail Reform Law." (Compls. at 12.)  Although Plaintiff alleges that he was indicted on an additional fifteen counts, he does not include any additional information concerning those charges.  (Compls. at 12.)

Further, Plaintiff fails to allege facts supporting his conclusion that his bail was excessive.  Rather, Plaintiff admits that he fired a gun during the argument with his neighbor "to scare him" which led to Plaintiff's arrest and indictment.  (Compls. at 4.)  Because Plaintiff has not alleged any facts tending to show that his bail was disproportional to the gravity of the offenses with which he was charged, he has failed to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Moreover, Plaintiff's excessive bail claims are also barred by absolute judicial immunity because the setting of bail is a judicial function that is entitled to absolute immunity.  Franklin v. Warren Cty. D.A.'s Office, No. 08-CV-0801, 2009 WL 161314, at *5 (N.D.N.Y. Jan. 21, 2009) (absolute judicial immunity barred excessive bail claim against judge) (citing Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994)

14

(reciting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction")); see infra at 21-22.   Therefore, Plaintiff's excessive bail claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

C.   Claims Challenging the Grand Jury Proceedings

Plaintiff also complains that his attorney, Garber, never told him about the second grand jury and waived his "right to testify without me knowing." (Compls. at 11.)   According to Plaintiff, "I have a right to appear before a grand jury as a witness on my own behalf." (Compls. at 11.)   This claim is a nonstarter.   It is well-established that a plaintiff has no federal constitutional right to either attend or testify before a grand jury. United States v. Mandujano, 425 U.S. 564, 571-72, 96 S. Ct. 1768, 1774 (1976); Franklin v. Warren Cty. D.A.'s Office, No. 08-CV-801, 2009 WL 161314, at *2, *5 (N.D.N.Y. Jan. 21, 2009) ("[T]here is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings."); see also Barton, 2018 WL 262836, at 3.[4]   While Plaintiff has a constitutional right

_____

[4] Under New York State law, a defendant has a right to testify before the grand jury as a witness on his own behalf if he has provided written notice of his request to the district attorney,

as a defendant in a criminal proceeding to be present and testify at his criminal trial, he does not have a constitutional or federal right to be present or to testify at grand jury proceedings.  Thus, Plaintiff has failed to state a claim under Section 1983 regarding his non-appearance before the grand jury because he has not alleged the violation of a constitutional or federal right.  Moreover, to the extent he seeks to impose Section 1983 liability on Garber, such claim is implausible because she is not a state actor.  See infra at 24-25.  Accordingly, these claims are not plausible and, thus, DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B), 1915A.

D.   Claims Challenging the Interrogation

        Plaintiff alleges that he was coerced by PO Miranda, Lt. Driscoll, Det. Andoos, Det. Throo, Det. Foranoce, and Det. Mazzie to give a statement without being read his Miranda Rights as required by Miranda v. Arizona, 384 U.S. 436, 467, 86 S. Ct. 1602

---

see N.Y. Crim. Proc. Law § 190.50(5)(a) ("When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent.").  Here, Plaintiff brings his claims under Section 1983 and provides no facts that would give rise to a plausible state law claim even affording the pro se Complaints a liberal construction.

(1966).  Plaintiff also claims that he was interrogated after he asked for a lawyer.  (Compls. at 9-10.)  These Section 1983 claims are implausible.  See, e.g., Blond v. City of Schenectady, No. 10-CV-0598, 2010 WL 4316810, at *4 (N.D.N.Y. Oct. 26, 2010) ("A Section 1983 claim cannot stand solely on the basis of an alleged failure to administer Miranda warnings.").

Insofar as Plaintiff alleges that he was not provided Miranda warnings before his interrogation,

> [t]his claim must be dismissed because the Second Circuit Court of Appeals has held that an alleged failure to provide Miranda warnings, standing alone, does not form the basis for liability under 42 U.S.C. § 1983. In reaching this conclusion, the Second Circuit reasoned that Miranda is a procedural safeguard as opposed to a right expressly set forth in the Fifth Amendment and that the remedy for a violation of Miranda is suppression of any un-Mirandized statements.

Johnson v. Bayerl, No. 04-CV-0370S, 2004 WL 2270804, at *2 (W.D.N.Y. Oct. 3, 2004) (citing Neighbour v. Covert, 68 F.3d 1508, 1510-11 (2d Cir. 1995) (citations omitted)); see also Chavez v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 2001 (2003) (plurality opinion) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants . . . a constitutional violation occurs only at trial." (internal quotation marks and citation omitted). Similarly, the questioning of Plaintiff after he allegedly

requested counsel does not give rise to a plausible Section 1983 claim.  Because Plaintiff is awaiting trial, "the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'"  Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998) (quoting Neighbour v. Covert, 68 F.3d 1508, 1510–11 (2d Cir. 1995)).  Accordingly, Plaintiff's Section 1983 claims challenging his interrogation are not plausible, see Faccio v. Eggleston, No. 10-CV-699, 2011 WL 3666588, at *5–6 (N.D.N.Y. Aug. 22, 2011), and are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b).

E.   Claims Challenging the Suspension of the Speedy Trial Act

Plaintiff also complains that his right to a speedy trial is being denied as a result of Governor Cuomo's suspension of "CPL 30.30, 240 the Speedy Trial Rights and the Automatic Disclosure file.  I have rights that cannot be infringed upon and when Gov. Cuomo suspended Criminal Procedure Law he violated Due Process Law – the 14th Amendment."  (Compls. at 14-15.)  As already noted, according to Plaintiff, "[t]he COVID-19 Pandemic is not an exceptional circumstance to be used to justify suspending criminal procedure law."  (Compls. at 21-22.)  This claim is implausible.  "Although CPL § 30.30 is entitled a 'speedy trial' statute, the

history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense." <u>People v. Haneiph</u>, 745 N.Y.S.2d 405, 408 (Sup. Ct. Kings Cty. 2002). Moreover, Plaintiff's claims seeking damages against Governor Cuomo fail for the additional reason that "[a] Section 1983 claim for damages against Governor Cuomo in his official capacity is barred by the Eleventh Amendment." <u>Randolph v. Cuomo</u>, No. 20-CV-4719, 2020 WL 6393015, at *4 (E.D.N.Y. Nov. 2, 2020) (citing <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003) (the Eleventh Amendment "bars the award of money damages against state officials in their official capacities")). Accordingly, these claims are implausible and, therefore, DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

IV. <u>Immunity</u>

Even if Plaintiff had alleged a viable claim against the state Defendants, Eleventh Amendment immunity bars Plaintiff's claims for damages against the State of New York and the individual state Defendants in their official capacities. <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

19

against the official's office.  As such, it is no different from a suit against the State itself." (internal citation and citations omitted)).  Similarly, Plaintiff's claims against the prosecutors and the judges are barred by absolute prosecutorial immunity and judicial immunity, respectively.  Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991); see also Thomas v. Ramos, No. 20-CV-3422, 2020 WL 2192716, at *3 (S.D.N.Y. May 5, 2020)).  "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery . . . because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  Deronette v. City of N.Y., No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citations, alterations, and quotation marks omitted).

   A. Sovereign Immunity

        The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  As a result, a State is immune from suits in federal court brought by its own citizens.  Soloviev v. Goldstein,

104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015) (citations omitted). This immunity extends to "officers acting on behalf of the State" and "to state agencies as well." Soloviev, 104 F. Supp. 3d at 243 (citing Winokur v. Office of Court Admin., 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002); Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)). As such, Eleventh Amendment immunity requires dismissal of all of Plaintiff's Section 1983 claims seeking damages against the Nassau County District Attorney's Office, the Nassau County District Court, Governor Cuomo, DA Singas, ADA Burke, ADA Aloise, Judge Murphy, and Judge Berkowitz. Accordingly, Plaintiff's Section 1983 claims seeking damages against these Defendants are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A.[5]

B. Judicial Immunity

It is well-settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999); see also Mireles, 502 U.S. at 9-10 (1991) (citations omitted)

---

[5] Although the Eleventh Amendment does not bar claims against the State seeking prospective injunctive relief, see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73, 116 S. Ct. 1114 (1996)), Plaintiff has not alleged a plausible claim seeking prospective injunctive relief for reasons set forth herein.

("[G]enerally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'").  This immunity applies to state court judges who are sued in federal court pursuant to 42 U.S.C. § 1983.  See Pizzolato v. Baer, 551 F. Supp. 355, 356 (S.D.N.Y. 1982).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  Stump v. Sparkman, 435 U.S. 349, 357 (1978).

Here, Plaintiff's allegations regarding Judge Murphy and Judge Berkowitz relate to actions each took as a judge while presiding over Plaintiff's criminal proceedings that occurred in state court.  (See generally Compls.)  As a result, the claims against Judge Murphy and Judge Berkowitz are barred by absolute judicial immunity and are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.  See Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial

immunity is 'frivolous' for purposes of [the IFP statute].").

        C. <u>Prosecutorial Immunity</u>

        Plaintiff's Section 1983 claims against DA Singas, ADA Burke and ADA Aloise seeking money damages are barred by absolute prosecutorial immunity.  It is well-established that prosecutors are entitled to absolute immunity from liability in suits seeking monetary damages for acts related to prosecutorial duties.  <u>See Burns v. Reed</u>, 500 U.S. 478, 486, 111 S. Ct. 1934 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case . . . ." (internal quotation marks and citation omitted)); <u>Ogunkoya v. Monaghan</u>, 913 F.3d 64, 67 (2d Cir. 2019) ("Absolute immunity protects a prosecutor not only from liability but also from suit.") (citation and quotation marks omitted).  "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate."  <u>Kroemer v. Tantillo</u>, 758 F. App'x 84, 86–87 (2d Cir. 2018).  Here, the challenged conduct of DA Singas, ADA Burke, and ADA Aloise, <u>i.e</u>, preparing and presenting an indictment to the Grand Jury, unquestionably falls within the scope of their prosecutorial duties.  <u>See Ogunkoya</u>, 913 F.3d at 71 ("The decision to initiate

prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function.") (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)); <u>see also</u> <u>Shmueli v. City of N.Y.,</u> 424 F.3d 231, 237 (2d Cir. 2005). Accordingly, DA Singas, ADA Burke, and ADA Aloise are entitled to absolute immunity with respect to Plaintiff's claims seeking monetary damages under Section 1983, and these claims are thus DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

D. <u>Claims Against Garber and Legal Aid</u>

Generally, attorneys, whether with the Legal Aid Society, court-appointed or privately retained, are not state actors for purposes of § 1983. <u>See</u> <u>Vermont v. Brillon</u>, 556 U.S. 81, 129 S. Ct. 1283, 1291 (2009) (holding that "assigned counsel ordinarily is not considered a state actor"); <u>Polk County v. Dodson</u>, 454 U.S. 312, 325, 102 S. Ct. 445 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

Because Garber and the Legal Aid Society of Nassau County are not state actors, and Plaintiff seeks to challenge the traditional functions of counsel to a defendant in a criminal

24

proceeding, these Section 1983 claims are not plausible.  See,
e.g., Kirkland v. N.Y.S. Div. of Parole, No. 20-CV-8606, 2020 WL
6729119, at *3 (S.D.N.Y. Nov. 13, 2020) (sua sponte dismissing
Section 1983 claims against Legal Aid attorney).  Accordingly,
Plaintiff's claims against Garber and the Legal Aid Society are
DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1).

V.    Abstention

        Apart from the deficiencies in Plaintiff's claims as set
forth above, pursuant to Younger and its progeny, the Court must
abstain from adjudicating his remaining claims seeking injunctive
relief.[6]  In Younger v. Harris, the Supreme Court concluded that
although federal courts have the power to enjoin state criminal
proceedings "when absolutely necessary for protection of
constitutional rights . . . this may not be done, except under
extraordinary circumstances, where the danger of irreparable loss

---

[6] Plaintiff seeks the dismissal of the indictments and his release
from incarceration in this Section 1983 civil rights case.  (See
generally Compls.)  However, the Supreme Court has established
that habeas relief is the exclusive remedy in federal court for a
state prisoner seeking a release from custody.  See Preiser v.
Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973) (holding
that when a prisoner is challenging "the very fact or duration of
his physical imprisonment, and the relief he seeks is a
determination that he is entitled to immediate release or a
speedier release from that imprisonment, his sole federal remedy
is a writ of habeas corpus.")

is both great and immediate." 401 U.S. 37, 45, 91 S. Ct. 746 (1971). In Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 134 S. Ct. 584 (2013), the Supreme Court clarified that Younger abstention is required in one of three types of state court proceedings:

> First, Younger preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.

571 U.S. 69, 78, 134 S. Ct. 584 (2013) (internal quotation marks and citations omitted); see also Lowell v. Vermont Dep't of Children & Families, No. 19-CV-3987, 2020 WL 7038598, at *1 (2d Cir. Dec. 1, 2020) (affirming district court's application of Younger abstention).

Here, insofar as Plaintiff seeks to have this Court intervene in the on-going state court criminal proceedings against him, this Court must abstain. Dismissing the indictments and releasing Plaintiff from incarceration as sought by Plaintiff would surely constitute "federal intrusion into ongoing state criminal proceedings." Sprint Commc'ns, 571 U.S. at 70. Moreover, Plaintiff fails to allege any facts that would bring his case within any exception to the general requirement that the

federal court abstain from intervening in, or enjoining, pending state criminal proceedings.  Accordingly, the Court ABSTAINS from adjudicating Plaintiff's constitutional claims seeking injunctive relief regarding his pending criminal case.

CONCLUSION

For the reasons set forth above, Plaintiff's applications to proceed in forma pauperis are GRANTED, and the Complaints are CONSOLIDATED into the first filed case, Case Number 20-CV-3988(JS)(AKT).  The Clerk of Court is DIRECTED to: (1) consolidate these actions; and (2) mark CLOSED the cases assigned Case Numbers 20-CV-3989(JS)(AKT) and 20-CV-3990(JS)(AKT).  Any future filings are to be docketed in **Case Number 20-CV-3988 only**.

Plaintiff's claims seeking money damages are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court ABSTAINS from intervening in Plaintiff's underlying state court criminal proceeding.  Accordingly, Plaintiff's claims seeking injunctive relief are DISMISSED WITHOUT PREJUDICE.  Additionally, the Court declines to exercise supplemental jurisdiction over any remaining state law claims in the Complaints, which are DISMISSED WITHOUT PREJUDICE, and may be refiled in state court.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith;

therefore, in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

　　　　　The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff and to mark this case CLOSED.

　　　　　　　　　　　　　　　SO ORDERED.


　　　　　　　　　　　　　　　　　　/s/ JOANNA SEYBERT
Dated: December  28 , 2020　　　　Joanna Seybert, U.S.D.J.
　　　　Central Islip, New York


28